UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ANTONIO L. BUCKMAN,

       Plaintiff,

v.                                Case No. 3:22-cv-903-MMH-PDB

SGT. ANDREW WINNINGHAM,

       Defendant.

_____

## **ORDER**

### **I. Status**

Plaintiff Antonio L. Buckman, an inmate in the custody of the Florida Department of Corrections (FDOC), initiated this action on August 15, 2022, by filing a pro se Civil Rights Complaint (Complaint; Doc. 1)[1] pursuant to 42 U.S.C. § 1983. In the Complaint, Buckman names Sergeant Andrew Winningham as the sole Defendant. He alleges that Sergeant Winningham acted with deliberate indifference in violation of the Eighth Amendment when he failed to provide Buckman with mental health services on May 10, 2022. See Complaint at 7-8. Buckman requests declaratory relief and monetary damages. Id. at 14.

---

[1] For all pleadings and documents filed in this case, the Court cites to the document and page numbers as assigned by the Court's Electronic Case Filing System.

This matter is before the Court on Defendant's Motion to Dismiss (Motion; Doc. 11). In support of the Motion, Defendant has submitted exhibits. See Doc. 11-1. Buckman filed a response in opposition to the Motion. See Plaintiff's Response to Defendant's Motion to Dismiss (Response; Doc. 12). Defendant filed a Reply (Doc. 15) with exhibits, see Doc. 15-1. And, Buckman filed a Surreply (Doc. 16) with exhibits, see Doc. 16-1. Thus, the Motion is ripe for review.

## II. Plaintiff's Allegations[2]

Buckman alleges that Sergeant Winningham acted with deliberate indifference in violation of the Eighth Amendment by denying Buckman access to mental health services after he declared a "psychological emergency" at Florida State Prison (FSP). Complaint at 8, 10. Specifically, he asserts that on May 10, 2022, at approximately 12:45 p.m., he "declared a psychological emergency through S[ergeant] Winningham." Id. at 7. Buckman advised Sergeant Winningham that he was experiencing "psychological issues such as

---

[2] In considering Defendant's Motion, the Court must accept all factual allegations in the Complaint as true, consider the allegations in the light most favorable to Buckman, and accept all reasonable inferences that can be drawn from such allegations. Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003); Jackson v. Okaloosa Cnty., 21 F.3d 1531, 1534 (11th Cir. 1994). As such, the facts recited here are drawn from the Complaint, and may well differ from those that ultimately can be proved.

2

distress due to the environment and stress that was being brought upon [him]";
however, Sergeant Winningham refused to contact "mental health." Id. at 7,
10. According to Buckman, he showed Sergeant Winningham a piece of metal
from a battery and stated that he would cut himself if Sergeant Winningham
did not contact mental health. Id. Sergeant Winningham then walked away
from the cell door. Id. Buckman then started to yell that he had a psychological
emergency, but Sergeant Winningham told him to stop yelling and acting
disorderly. Id. Buckman again advised Sergeant Winningham that he had a
psychological emergency and would cut himself. Id. Sergeant Winningham
responded by saying that he did not care. Id.

       According to Buckman, every fifteen minutes for the next hour, he
informed Sergeant Winningham of his psychological emergency and
threatened to harm himself. Id. at 11. At approximately 2:00 p.m., Buckman
showed Sergeant Winningham two cuts that he made to his left forearm. Id.
Sergeant Winningham asked, "why [are] you doing that when you [are] moving
today." Id. Buckman again informed Sergeant Winningham that he had a
psychological emergency. Id. However, Sergeant Winningham refused to
contact mental health and stated that Buckman could continue to cut himself.
Id.

Buckman asserts that at approximately 2:10 p.m., he started to bang on his cell door and scream that he had a psychological emergency. Id. Sergeant Winningham told Buckman to stop banging on the cell door. Id.  Buckman then cut his left forearm in front of Sergeant Winningham, who laughed and stated, "cut off your wrist for all I care." Id. at 11-12.  According to Buckman, he made a total of seven cuts to his left forearm. Id. at 12. Buckman further avers that he had visited a mental health counselor "that morning about his distress and thoughts to self-harm." Id. at 13.

### III. Summary of the Arguments

In the Motion, Defendant argues that the Court should dismiss the claim against him because: (1) Buckman failed to properly exhaust his administrative remedies, and (2) he cannot obtain declaratory relief for past actions. Motion at 4-10. Buckman responds that the Court should not dismiss the claim because he did exhaust his administrative remedies. Response at 3-6.

### IV. Exhaustion of Administrative Remedies

### A. PLRA Exhaustion

The Eleventh Circuit Court of Appeals has held the exhaustion of administrative remedies by a prisoner is "a threshold matter" to be addressed

4

before considering the merits of a case. Chandler v. Crosby, 379 F.3d 1278, 1286 (11th Cir. 2004); see also Myles v. Miami-Dade Cnty. Corr. & Rehab. Dep't, 476 F. App'x 364, 366 (11th Cir. 2012)[3] (noting that exhaustion is "a 'threshold matter' that we address before considering the merits of the case") (citation omitted). It is well settled that the Prison Litigation Reform Act (PLRA) requires an inmate wishing to challenge prison conditions to first exhaust all available administrative remedies before asserting any claim under 42 U.S.C. § 1983. See 42 U.S.C. § 1997e(a); Porter v. Nussle, 534 U.S. 516, 524 (2002). A prisoner such as Buckman, however, is not required to plead exhaustion. See Jones v. Bock, 549 U.S. 199, 216 (2007). Instead, the United States Supreme Court has recognized that "failure to exhaust is an affirmative defense under the PLRA[.]" Id. Notably, exhaustion of available administrative remedies is "a precondition to an adjudication on the merits" and is mandatory under the PLRA. Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008). Not

---

[3] The Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point. See McNamara v. GEICO, 30 F.4th 1055, 1060-61 (11th Cir. 2022); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

only is there an exhaustion requirement, the PLRA "requires proper exhaustion." <u>Woodford v. Ngo</u>, 548 U.S. 81, 93 (2006).

> Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims. Administrative law does this by requiring proper exhaustion of administrative remedies, which "means using all steps that the agency holds out, and doing so <u>properly</u> (so that the agency addresses the issues on the merits)." <u>Pozo</u>,[4] 286 F.3d, at 1024 (emphasis in original).

<u>Woodford</u>, 548 U.S. at 90. And, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." <u>Id.</u>

The United States Supreme Court has instructed that "[c]ourts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement. The only limit to § 1997e(a)'s mandate is the one baked into its text: An inmate need exhaust only such administrative remedies as are 'available.'" <u>Ross v. Blake</u>, 578 U.S. 632, 648 (2016). For an administrative remedy to be available, the "remedy must be 'capable of use for the accomplishment of [its] purpose.'" <u>Turner v. Burnside</u>, 541 F.3d 1077, 1084

---

[4] <u>Pozo v. McCaughtry</u>, 286 F.3d 1022 (7th Cir. 2002).

(11th Cir. 2008) (quoting <u>Goebert v. Lee Cnty.</u>, 510 F.3d 1312, 1322-23 (11th Cir. 2007)).

Because failure to exhaust administrative remedies is an affirmative defense, Defendant bears "the burden of proving that [Buckman] has failed to exhaust his available administrative remedies." <u>Id.</u> at 1082. In accordance with Eleventh Circuit precedent, a court must employ a two-step process when examining the issue of exhaustion of administrative remedies.

> After a prisoner has exhausted the grievance procedures, he may file suit under § 1983. In response to a prisoner suit, defendants may bring a motion to dismiss and raise as a defense the prisoner's failure to exhaust these administrative remedies. <u>See</u> <u>Turner</u>, 541 F.3d at 1081. In <u>Turner v. Burnside</u> we established a two-step process for resolving motions to dismiss prisoner lawsuits for failure to exhaust. 541 F.3d at 1082. First, district courts look to the factual allegations in the motion to dismiss and those in the prisoner's response and accept the prisoner's view of the facts as true. The court should dismiss if facts as stated by the prisoner show a failure to exhaust. <u>Id.</u> Second, if dismissal is not warranted on the prisoner's view of the facts, the court makes specific findings to resolve disputes of fact, and should dismiss if, based on those findings, defendants have shown a failure to exhaust. <u>Id.</u> at 1082-83; <u>see also</u> <u>id.</u> at 1082 (explaining that defendants bear the burden of showing a failure to exhaust).

<u>Whatley v. Warden, Ware State Prison</u>, 802 F.3d 1205, 1209 (11th Cir. 2015).

At step two of the procedure established in <u>Turner</u>, the Court can consider facts

outside the pleadings as long as those facts do not decide the case and the parties have had sufficient opportunity to develop the record. <u>Bryant</u>, 530 F.3d at 1376; <u>see also</u> <u>Jenkins v. Sloan</u>, 826 F. App'x 833, 838-39 (11th Cir. 2020). In evaluating whether Buckman has satisfied the exhaustion requirement, the Court notes that the Eleventh Circuit has determined that a "prisoner need not name any particular defendant in a grievance in order to properly exhaust his claim." <u>Parzyck v. Prison Health Servs., Inc.</u>, 627 F.3d 1215, 1218 (11th Cir. 2010).

### B. Florida's Prison Grievance Procedure

State law "determines what steps are required to exhaust." <u>Dimanche v. Brown</u>, 783 F.3d 1204, 1207 (11th Cir. 2015); <u>see also</u> <u>Jones</u>, 549 U.S. at 218 (stating that "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion"). The FDOC provides an internal grievance procedure for its inmates. <u>See</u> Fla. Admin. Code R. 33-103.001 through 33-103.018. Generally, to properly exhaust administrative remedies, a prisoner must complete a three-step sequential process. First, an inmate must submit an informal grievance at the institutional level to a designated staff member responsible for the specific problem. <u>See</u> Fla. Admin. Code R. 33-103.005. If the issue is not resolved, the inmate must submit a formal grievance

at the institutional level. <u>See</u> Fla. Admin. Code R. 33-103.006. If the matter is not resolved through formal and informal grievances, the inmate must file an appeal to the Office of the FDOC Secretary. <u>See</u> Fla. Admin. Code R. 33-103.007. However, under certain specified circumstances, an inmate can bypass the informal-grievance stage and start with a formal grievance at the institutional level. <u>See</u> Fla. Admin. Code R. 33-103.005(1); 33-103.006(3). Or an inmate can completely bypass the institutional level and proceed directly to the Office of the FDOC Secretary by filing a "direct grievance." <u>See</u> Fla. Admin. Code R. 33-103.007(3). Emergency grievances and grievances of reprisal are types of "direct grievances" that may be filed with the Office of the FDOC Secretary. <u>See</u> Fla. Admin. Code R. 33-103.007(3)(a).

Florida Administrative Code Rule 33-103.011 provides time frames for the submission of grievances. Informal grievances must be received within twenty days from the date on which the grieved incident or action occurred. <u>See</u> Fla. Admin. Code R. 33-103.011(1)(a). Formal grievances must be received no later than fifteen days from the date of the response to the informal grievance. <u>See</u> Fla. Admin. Code R. 33-103.011(1)(b). Similarly, grievance appeals to the Office of the FDOC Secretary must be received within fifteen days from the date that the response to the formal grievance is returned to the

inmate. <u>See</u> Fla. Admin. Code R. 33-103.011(1)(c). According to Rule 33-103.014, an informal grievance, formal grievance, direct grievance, or grievance appeal "may be returned to the inmate without further processing if, following a review of the grievance, one or more . . . conditions are found to exist." Fla. Admin. Code R. 33-103.014(1). The rule provides an enumerated list as "the only reasons for returning a grievance without a response on the merits." <u>See</u> Fla. Admin. Code R. 33-103.014(1)(a)-(y). A grievance can be returned without action if it: is untimely; "addresses more than one issue or complaint"; is "so broad, general or vague in nature that it cannot be clearly investigated, evaluated, and responded to"; is "not written legibly and cannot be clearly understood"; is a supplement to a previously-submitted grievance that has been accepted for review; does not "provide a valid reason for by-passing the previous levels of review as required or the reason provided is not acceptable"; or does not include the required attachments. <u>See</u> Fla. Admin. Code R. 33-103.014(1).

### C. The Parties' Positions Regarding Exhaustion

Defendant argues that Buckman failed to properly exhaust his administrative remedies. Motion at 4. According to Defendant, Buckman did not file any informal or formal grievances about the denial of mental health

services, "instead moving straight to the grievance appeal stage which resulted

in his grievance appeal being properly returned without action as not in

compliance with the inmate grievance procedure." Id. at 9. Defendant attaches

to the Motion the grievance appeal that Buckman submitted on June 6, 2022:

> Grievant is proceeding to the next step, whereas grievant has filed three different grievances at the institutional level, yet his grievances are being thrown away by Ms. Thompson the grievance coordinator and the time has expired for a response. Such is in accordance with Ch. 33-103.

### STATEMENT OF FACTS

> On May 10, 2022, while housed on D-wing at approximately 12:00pm – 1:00pm[,] I declared a psychological emergency through Sgt. A. Winningham due to the fact that I was experiencing distress. I informed the said officer I was thinking about self-harming myself and need to talk to someone [and] be moved to another wing. Sgt. Winningham said he was not going to assist me with my psychological emergency so I may as well cut. Sgt. Winningham then left my cell door at that time[.] I repeatedly stated under the cell door loud and clear that I had a psych-emergency and was gonna cut. The said officer stated get off the cell door being disorderly. At that time I self-inflicted one cut to my left forearm and yelled under the cell door so that the wing audio could hear that I cut and had a psychological emergency and that Sgt. Winningham was denying me such. Sgt. Winningham then approached my cell door and said[,] where I don't see nothing[.] I then showed him the cut and threat[ened] to inflict more if he didn't call for assistance. He said he was not calling mental health

11

but the l[ieutenant] to have me put on camera and chemical agents used against me. I was den[ied] mental health assistance for 2½ hours. Denied medical after cutting myself several time[s]. I was seen by medical days later on 5-16-22 or 5-17-22. Medical lied and said date of injury [is] unknown when I told them the date [and] time. I seek that D-wing audio [and] wing video of 2nd floor be p[r]eserved for litigation purposes starting at 12:30pm – 3:30pm on 5-10-22.

Doc. 11-1 at 3. On June 15, 2022, the Secretary responded:

Your request for administrative appeal is in non-compliance with the Rules of the Department of Corrections, Chapter 33-103, Inmate Grievance Procedure. The rule requires that you first submit your grievance at the appropriate level at the institution. You have not done so, or you have not provided this office with a copy of that grievance, nor have you provided a valid or acceptable reason for not following the rules.

Our records reflect that all grievances received from you by FSP involving complaints against staff have been responded to and returned to you.

Based on the foregoing information, your appeal is returned without action.

Id. at 4.

In response to Defendant's argument, Buckman contends that he filed two formal grievances at the institutional level on May 11, 2022 and May 19, 2022, respectively; however, they were "thrown away." Response at 5. When Buckman did not receive "any receipts" for his formal grievances, he submitted

12

an appeal to the Secretary. Id. According to Buckman, he properly complied with Rule 33-103.011(4), which provides that when the time limit for responding to grievances has expired, the grievant may proceed to the next step of the process. Id.

Defendant replies that Buckman's "self-serving, unsupported" allegation about the destruction of his grievances "lacks credibility." Reply at 9. According to Defendant, Buckman filed numerous grievances at FSP, all of which received responses. Id. Defendant argues that the grievance coordinator "never interfered with [Buckman's] grievance process," id. at 8, nor could she have interfered with the process "as the system is a closed loop," id. at 10.

Defendant attaches to his Reply declarations and records regarding Buckman's exhaustion efforts. See Doc. 15-1. Defendant provides reports of the informal grievances, formal grievances, and grievance appeals that Buckman submitted between May 1, 2022 and August 18, 2022. Doc. 15-1 at 1, 14, 26-27. The reports demonstrate that Buckman submitted twelve informal grievances, five formal grievances, and five grievance appeals during that time frame. Id. Defendant also attaches as exhibits copies of the grievances, appeals, and responses. Id. at 2-13, 15-25, 28-38.

Defendant submits the declaration of Alan McManus, the bureau chief

13

of the FDOC Office of Policy Management and Inmate Appeals. Id. at 39. McManus avers that after a review of the available records in FDOC's Central Office, he has determined "that there was no hindrance impeding Inmate Buckman's utilization of the grievance procedure at any level; informal, formal, or appeal. All grievances that Inmate Buckman submitted were responded to and returned to him per Rule 33-103.001." Id. As to Buckman's allegation that the grievance coordinator destroyed his grievances, McManus states that Rule 33-103.006(3) allows an inmate to bypass the informal-grievance stage and file a grievance of reprisal in a sealed envelope with the reviewing authority. Id. at 39-40. According to McManus, the record does not demonstrate that Buckman filed a grievance of reprisal "regarding allegations of staff misconduct." Id. at 40.

In her declaration, Amanda McGregor, grievance coordinator at FSP, avers that she reviewed the grievance process for inmates in confinement and close management. Id. at 42. She explains that the mail room staff carry the grievance box through the confinement and close management housing areas, which "are recorded with video and audio recording." Id. "The box is enclosed and locked with a slot large enough to place a grievance inside." Id. McGregor states that the inmate will hold his grievance through the flap or up to the

14

window when mail room staff bring the grievance box to his cell. Id. The inmate either places the grievance into the box or the mail room staff will place it into the box "in view of the inmate." Id. According to McGregor, the grievance coordinator is the only person with a key to the grievance box. Id. Once the grievance coordinator receives the box, she unlocks it, removes the grievances, logs them, and sends them to the appropriate respondents. Id. McGregor avers that she has neither destroyed inmate grievances nor known of a staff member who destroyed inmate grievances. Id.

In his Surreply, Buckman argues that "the nature of his complaint" did not require him to file an informal grievance. Surreply at 4. Instead, he filed two formal grievances and "receiving no return receipts in two (2) days[,] [he] knew that his complaints were thrown away by the grievance coordinator Ms. McGregor." Id. Buckman argues that he then proceeded to the next step of the grievance process in compliance with Rule 33-103.011(4). Id. According to Buckman, he "is not implying that the grievance process at 'FSP' was unavailable," only that McGregor destroyed two formal grievances. Id. at 6. He maintains that "if she didn't destroy the grievance as she alleged in her affidavit, 'then who destroyed the grievance is the big question for the jury.'" Id.

15

Buckman attaches as an exhibit a previous grievance appeal he submitted that he contends "establishes a pattern of destroying inmate's complaints by Ms. McGregor." Surreply at 7. The grievance appeal, submitted on February 15, 2023, states in relevant part:

> This is a complaint to central office. Grievant is by-passing the institutional level due to the fact that Grievant has provided the institution with ample [amount] of time to respon[d] to his complaint that was submitted between 12-13-22 [and] 12-18-22 concerning Sgt. Neagu's deliberate indifference to Grievant's mental health needs[,] where Grievant was denied his psychological emergency from approximately 12:00pm – 4:00pm on 12-12-22 in which Grievant verbally informed Sgt. Neagu out loud that if he continues to deny Grievant his mental health assistance, he was going to self-harm himself by cutting his wrist. Sgt. Neagu stated he didn't care and wasn't going to call for no assistance. About 30 minutes later Grievant cut his wrist three (3) x's then showed them to the said sergeant in which he just looked and said[,] so. At that time Grievant again stated out loud that he had cut and was seeking a psychological emergency. Sgt. Neagu continued to deny Grievant assistance in which Grievant cut four more times to equal seven lacerations. Thereafter, Nurse Miller conducted her rounds in issuing meds[.] I informed her that I had declared a psychological emergency and was denied so I cut. She stated she would send a nurse down to see me. No nurse came on 12-13-22. I showed Ms. Miller again, with no results. [T]o be seen by medical on 12-14-22[,] I submitted a sick call to have my injuries reported and documented by Nurse S. Mally. It shall be noted Grievant submitted two separate grievances on different days

16

> concerning this issue such was between 12-13-22 – 12-16-22 and the second being on Dec. 20, 2022[.] No receipt was ever mailed to me. I have followed the rules and initiated informal grievances inquiring about this specific grievance with no results[.] I feel that my complaints w[ere] thrown away[.] I further seek that the institution preserve the audio [and] video of H-wing first floor 1100 side between 10:30am – 4:00pm on 12-12-22.

Doc. 16-1 at 2. On February 28, 2023, the Secretary responded:

> Your request for administrative appeal is in non-compliance with the Rules of the Department of Corrections, Chapter 33-103, Inmate Grievance Procedure. The rule requires that you first submit your grievance at the appropriate level at the institution. You have not done so, or you have not provided this office with a copy of that grievance, nor have you provided a valid or acceptable reason for not following the rules.
>
> Our records reflect that all grievances received from you involving complaints against staff have been responded to and returned to you.
>
> Based on the foregoing information, your appeal is returned without action.

Id. at 1.

### D. **Turner** Step One

Under the first step of the Turner analysis, the Court must review the allegations in the Motion and Response and accept as true Buckman's allegations. See Whatley, 802 F.3d at 1209. If Buckman's allegations in the

17

Response show a failure to exhaust, then dismissal would be appropriate. <u>See</u> <u>id.</u>

The Court now turns to the allegations in the parties' respective filings concerning Buckman's exhaustion efforts. Defendant asserts that Buckman failed to file informal or formal grievances at the institutional level regarding the denial of mental health services. Motion at 9. Instead, he filed a grievance appeal with the Secretary that it returned without action for failure to comply with procedural requirements. <u>Id.</u> Therefore, Defendant contends that Buckman did not properly exhaust his administrative remedies because he failed to comply with the FDOC's grievance procedure. <u>See</u> <u>id.</u>

Buckman responds that he filed two formal grievances, on May 11, 2022 and May 19, 2022. Response at 5. He contends that these grievances were "thrown away," and he never received responses to them. <u>Id.</u> According to Buckman, he then proceeded to the next step of the grievance process in accordance with Rule 33-103.011(4). <u>Id.</u> Buckman argues that in his grievance appeal, he provided a valid explanation for bypassing the institutional step of the grievance process. <u>Id.</u> Accepting Buckman's view of the facts as true, the Court cannot dismiss the Complaint at the first step of the <u>Turner</u> analysis.

### E. <u>Turner</u> Step Two

As dismissal would not be appropriate based on the allegations in the Motion, Response, Reply, and Surreply, the Court next turns to the second prong of the <u>Turner</u> analysis. The parties primarily dispute whether Buckman filed two formal grievances on May 11, 2022, and May 19, 2022, about the denial of mental health services. <u>See</u> Response at 5; Reply at 13. Buckman contends that he submitted grievances on these dates; however, he maintains that McGregor destroyed them.[5] Response at 5; Surreply at 6. Defendant asserts that Buckman did not file any relevant grievances at the institutional level. Motion at 9; Reply at 7.

The Court finds that Defendant has met his burden of establishing that Buckman failed to properly exhaust his administrative remedies. The grievance records submitted by Defendant demonstrate that Buckman did not file any formal grievances on May 11th and May 19th or any grievances at the institutional level about the denial of mental health services alleged in the Complaint. Doc. 15-1 at 14-25. Although Buckman contends McGregor

---

[5] Buckman does not dispute that McGregor was the grievance coordinator when he allegedly filed the formal grievances despite referring to the grievance coordinator as "Ms. Thompson" in the Complaint and relevant grievance appeal. Complaint at 12; Doc. 11-1 at 3. Instead, in the Surreply, he specifically alleges that McGregor destroyed his grievances. Surreply at 6.

destroyed the May 11th and May 19th grievances, his assertion is unavailing. Buckman neither summarizes the contents of the formal grievances that he allegedly submitted on those dates, nor does he say how he submitted them or why, beyond mere speculation, he believes they were destroyed.

Reliable evidence supports the conclusion that Buckman never submitted any relevant grievances about the May 10, 2022 incident at the institutional level. Between May 1, 2022 and August 18, 2022, Buckman filed approximately seventeen grievances at the institutional level. Doc. 15-1 at 1-25. All of these grievances produced responses. Id. Buckman's history of filing grievances, by itself, is "evidence that the defendants did not make administrative remedies unavailable to him or . . . destroy his grievances." Whatley v. Smith, 898 F.3d 1072, 1083 (11th Cir. 2018). Further, as established by McGregor's sworn declaration, a grievance system was in place at FSP at the relevant time. Doc. 15-1 at 42. McGregor avers that she has never destroyed grievances or witnessed other staff members destroy grievances. Id. at 42. Although Buckman attaches a grievance to his Surreply that he submitted on February 23, 2023, wherein he writes that his informal and formal grievances "w[ere] thrown away," Doc. 16-1 at 2, his self-serving,

unsupported statement by itself fails to establish that McGregor destroyed grievances, Doc. 15-1 at 1-25.

Buckman also does not offer a convincing explanation as to why McGregor would destroy the May 11th and May 19th formal grievances but would allow all of his other grievances to proceed. According to Buckman, McGregor destroys grievances "to protect her fellow officer[]s when the complaint is serious." Surreply at 7. However, Buckman filed an arguably equally serious formal grievance on July 22, 2022, about correctional officers' excessive use of force, during which he sustained "nerve damage in the hands [and] wrists of both arms, lacerations to both wrist[s] [and] back injury." Doc. 15-1 at 22. Officials responded on July 26, 2022 that his allegations of staff misconduct were "documented and reported for appropriate review and disposition." Id. at 23. As such, the record belies Buckman's statement that McGregor or others threw away grievances perceived to be serious.

Considering the pleadings and the record evidence, the Court credits Defendant's affidavits and exhibits over Buckman's assertions and exhibit. Buckman submitted an appeal grievance about the May 10, 2022 denial of mental health services, which the Secretary returned without action because Buckman did not attach his formal grievance as required or provide a valid

reason for bypassing previous levels of review. Doc. 11-1 at 4; see Fla. Admin.

Code R. 33-103.014(1)(f)-(g). The Court finds that Buckman did not file formal

grievances on either May 11, 2022, or May 19, 2022, nor did he file any informal

or formal grievances about the denial of mental health services between May

10, 2022, and the filing of the Complaint. As such, he bypassed the institutional

level of review, and in doing so, failed to comply with the FDOC's grievance

process. See Dimanche, 783 F.3d at 1211 (recognizing that the FDOC uses a

three-step process for inmate grievances that includes an informal grievance,

formal grievance, and appeal).[6] The Court further finds that McGregor did not

destroy the alleged May 11th and May 19th grievances, and Buckman had

available administrative remedies. Therefore, he did not provide a valid reason

for bypassing the previous levels of review as determined by the Office of the

FDOC Secretary. See Doc. 11-1 at 3 ("Grievant is proceeding to the next step,

whereas grievant has filed three different grievances at the institutional level,

yet his grievances are being thrown away by Ms. Thompson the grievance

coordinator and the time has expired for a response."); Fla. Admin. Code R. 33-

---

[6] An inmate can bypass the informal grievance stage and start with a formal
grievance at the institutional level when he files a medical grievance. See Fla. Admin.
Code R. 33-103.006(3)(e). The Court presumes a grievance concerning the denial of
mental health services would qualify as a medical grievance, and Buckman could
bypass the informal grievance stage. However, Buckman does not argue that he
bypassed the institutional level by filing a direct medical grievance.

103.014(1)(f). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." <u>Woodford</u>, 548 U.S. at 90. Accordingly, Buckman did not properly exhaust his administrative remedies because he failed to comply with the FDOC's grievance procedure.

Lastly, to the extent Buckman requests an evidentiary hearing, the Court will not conduct a hearing. <u>See</u> Surreply at 1 ("The Plaintiff . . . hereby moves this Honorable Court for an order denying the Defendant's Motion to Dismiss, but in the alternative grant his request for an evidentiary hearing.").[7] Both parties filed written arguments regarding the exhaustion issue, and they have had ample opportunity to file affidavits and exhibits in support of their positions. Buckman fails to explain why these proceedings did not provide him a sufficient opportunity to present his evidence or offer any reason to suggest that he would have additional evidence bearing on exhaustion to present at a hearing. In other words, he has not made "an explicit request for the district court to gather a key document from the defendant[] and perform a specific evidentiary hearing. . . ." <u>McIlwain v. Burnside</u>, 830 F. App'x 606, 611 (11th Cir. 2020). Accordingly, the Court finds Buckman had available administrative

---

[7] A request for affirmative relief, such as an evidentiary hearing, is not properly before the Court when it is simply imbedded in a response to a motion, or as in this case, in a surreply.

23

remedies, and he failed to properly exhaust the claim against Sergeant Winningham. Based on the above, the Motion is due to be granted on that basis.[8]

Accordingly, it is now

**ORDERED:**

1. Defendant Sergeant Andrew Winningham's Motion to Dismiss (Doc. 11) is **GRANTED** to the extent Defendant seeks dismissal for Buckman's failure to exhaust his administrative remedies. In all other respects, the Motion is denied without prejudice.

2. Plaintiff Antonio L. Buckman's Complaint (Doc. 1) is **DISMISSED WITHOUT PREJUDICE**.

3. The Clerk shall enter judgment dismissing this case without prejudice, terminate any pending motions, and close the case.

**DONE AND ORDERED** at Jacksonville, Florida, this 1st day of August, 2023.

MARCIA MORALES HOWARD
United States District Judge

---

[8] Because the claims against Defendant are due to be dismissed for failure to exhaust, the Court need not address Defendant's remaining argument.

24

Jax-9 7/31
c:      Antonio L. Buckman, #Q09285
        Counsel of record